```
                    IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                             AT CHARLESTON


_____x
                             :
UNITED STATES OF AMERICA,     :          Criminal Action
                             :
              Plaintiff,      :          No.  2:14-cr-00277
                             :
v.                           :
                             :          Date:  March 18, 2015
ROBERT REYNOLDS,              :
                             :
              Defendant.      :
_____x
```

```
                    TRANSCRIPT OF PLEA HEARING HELD
            BEFORE THE HONORABLE THOMAS E. JOHNSTON, JUDGE
                   UNITED STATES DISTRICT COURT
                   IN CHARLESTON, WEST VIRGINIA
```

APPEARANCES:

For the Government:         AUSA PHILIP H. WRIGHT
                            AUSA ERIC P. BACAJ
                            U.S. Attorney's Office
                            P.O. Box 1713
                            Charleston, WV  25326-1713

For the Defendant:          R. BRANDON JOHNSON, ESQ.
                            Stroebel & Johnson
                            P. O. Box 1668
                            Lewisburg, WV 24901

Probation Officer:          Matthew Lambert


Court Reporter:             Ayme Cochran, RMR, CRR

Proceedings recorded by mechanical stenography;
transcript produced by computer.

1          PROCEEDINGS had before The Honorable Thomas E. Johnston,

2     Judge, United States District Court, Southern District of West

3     Virginia, in Charleston, West Virginia, on March 18, 2015, at

4     2:09 p.m., as follows:

5          COURTROOM DEPUTY CLERK:  The matter before the Court is

6     the United States of America versus Robert Reynolds, criminal

7     action number 2:14-cr-00277, scheduled for a plea hearing.

8          THE COURT:  Good afternoon.  Will counsel please note

9     their appearances?

10          MR. WRIGHT:  Good afternoon, Your Honor.  Philip Wright

11     and Eric Bacaj on behalf of the United States and Nick Gillespie,

12     also present at counsel table.

13          MR. JOHNSON:  Good afternoon, Your Honor.  Brandon

14     Johnson on behalf of the defendant, Robert Reynolds, who is

15     present in person.

16          THE COURT:  Good afternoon.

17        Mr. Reynolds, will you please stand, and I'll ask the deputy

18     clerk to administer an oath to you at this time.

19          COURTROOM DEPUTY CLERK:  Please raise your right hand.

20          **ROBERT REYNOLDS, DEFENDANT, SWORN**

21          THE COURT:  You may be seated.

22        Mr. Reynolds, do you understand that you are now under oath

23     and you must tell the truth and, if you testify falsely, you may

24     face prosecution for perjury or for making a false statement?

25          THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Throughout the course of this hearing, I'm

2    going to be asking you a number of questions and I want to make

3    sure that you and I are communicating clearly.  So, if at any

4    time I ask a question that you don't understand, or anything else

5    occurs in this hearing that you don't understand, I want you to

6    feel free to speak up and seek clarification.

7          Also, if at any time you need to confer with your attorney,

8    I'll be pleased to pause the proceedings to allow you to do so.

9    Do you understand all that?

10          THE DEFENDANT:  I do.

11          THE COURT:  All right.  Let me begin by asking you, how

12    old are you?

13          THE DEFENDANT:  I am 63.

14          THE COURT:  And can you briefly describe your

15    educational background?

16          THE DEFENDANT:  I spent some time at the University of

17    Wisconsin and then went to part-time school, eventually

18    graduating with a Bachelor in Business.

19          THE COURT:  Can you read and a write and understand the

20    English language?

21          THE DEFENDANT:  I can.

22          THE COURT:  Can you briefly describe your work

23    experience?

24          THE DEFENDANT:  I started working in the chemical

25    industry in 1973, worked for a chemical company, eventually

```
 1    becoming Director of Regulatory Affairs, and then going into

 2    private consulting in 1991.

 3              THE COURT:  Have you taken any medicine or drugs or

 4    consumed any alcoholic beverages within the last 24 hours?

 5              THE DEFENDANT:  I have not.

 6              THE COURT:  Including prescription drugs?

 7              THE DEFENDANT:  Correct.

 8              THE COURT:  Have you ever been treated for any mental

 9    illness or addiction to drugs of any kind?

10              THE DEFENDANT:  No, I have not.

11              THE COURT:  Do you know where you are and why you are

12    here today?

13              THE DEFENDANT:  Yes, I do.

14              THE COURT:  Do you have any hearing impairment or other

15    disability which would prevent you from fully participating in

16    this hearing today?

17              THE DEFENDANT:  I do not.

18              THE COURT:  And then, Mr. Johnson, do you have any

19    reason to question the competence of your client?

20              MR. JOHNSON:  None, Your Honor

21              THE COURT:  All right.  I believe I've been provided

22    with the original of the plea agreement.

23         Mr. Wright, has the plea agreement changed in any way since

24    the courtesy copy provided to my chambers?

25              MR. WRIGHT:  No, Your Honor
```

1              THE COURT:  All right.  Very well.

2         Mr. Reynolds, is that your signature which appears on the

3    seventh and final page of the plea agreement?

4              THE DEFENDANT:  Yes, Your Honor, it is.

5              THE COURT:  And are those your initials that appear on

6    the other pages?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  And have you read and reviewed with your

9    attorney each of the 15 paragraphs of the plea agreement and the

10   exhibits attached to the plea agreement?

11             THE DEFENDANT:  I have.

12             THE COURT:  And do you -- do you wish to have the

13   various -- do you wish to have the various terms and provisions

14   of the plea agreement orally stated on the record or do you

15   believe that that is unnecessary?

16             THE DEFENDANT:  I believe that's unnecessary, Your

17   Honor.

18             THE COURT:  And do you understand and agree with all of

19   the terms and provisions contained in the plea agreement?

20             THE DEFENDANT:  I do, Your Honor.

21             THE COURT:  And, Mr. Johnson, have you reviewed each of

22   the 15 paragraphs of the plea agreement and its exhibits with

23   your client?

24             MR. JOHNSON:  I have, Your Honor.

25             THE COURT:  And, Mr. Johnson and Mr. Wright, is there

1  any reason why either of you believe that the various terms of

2  the plea agreement should be orally stated on the record?

3             MR. WRIGHT:  No, Your Honor.

4             MR. JOHNSON:  No, Your Honor.

5             THE COURT:  All right.  Very well.

6        Well, nonetheless, Mr. Reynolds, there are some provisions

7  of the plea agreement I want to discuss with you, beginning with

8  Section 9, which begins on Page 3 and runs over onto Page 4, and

9  is entitled "Stipulation of Facts and Wavier of Federal Rule of

10 Evidence 410".

11       Now, this section relates to a couple of different matters,

12 the first of which is the Stipulation of Facts, which is attached

13 to the plea agreement as Exhibit B, and I want to turn your

14 attention to that document now.  That is a seven-page document

15 and, on the last page, and is that your signature which appears

16 there?

17            THE DEFENDANT:  Yes, Your Honor.

18            THE COURT:  And have you read the Stipulation of Facts?

19            THE DEFENDANT:  I have, Your Honor.

20            THE COURT:  And do you agree that all of the facts

21 contained in the stipulation are true?

22            THE DEFENDANT:  Yes, I do.

23            THE COURT:  All right.  A little bit about what will be

24 happening from here on out.

25       I will be asking the probation officer to prepare a

1    Presentence Investigation Report.  That report will contain

2    detailed recommended factual findings regarding this offense and

3    your background, among other things.

4        Ultimately, at sentencing, I will make factual findings

5    based at least in part on the recommendations contained in the

6    Presentence Report.

7        Now, you and the government have reached an agreement

8    regarding certain facts contained in this stipulation, but I want

9    you to understand that, in this process, neither the probation

10   officer, nor this Court, are bound by that Stipulation of Facts.

11   Do you understand that?

12           THE DEFENDANT:  I do, Your Honor.

13           THE COURT:  Do you further understand that if I make

14   findings of fact at sentencing that are different from or

15   inconsistent with the facts contained in the stipulation, you

16   will still be bound by your guilty plea and would have no right

17   to withdraw it?  Do you understand that?

18           THE DEFENDANT:  I do understand that.

19           THE COURT:  All right.  Now, the other matter addressed

20   in Section 9 is a Waiver of Federal Rule of Evidence 410.

21       First of all, let me ask you, do you understand that a

22   "waiver" is legal term that means you're giving something up?

23           THE DEFENDANT:  Yes, I do, Your Honor.

24           THE COURT:  All right.  And Rule 410 generally provides

25   that information or documents regarding plea negotiations, and

1    this Stipulation of Fact would fit into that category, that sort

2    of thing is generally not admissible at trial; in other words,

3    the government can't use that against you at trial, as a general

4    rule.

5         However, if you withdraw from the plea agreement or if it's

6    no longer any good because you have violated one or more of its

7    terms and there is a subsequent trial, under this waiver, the

8    government would be allowed to present the Stipulation of Facts

9    in its case in chief or for other purposes at that trial.  Do you

10   understand that waiver?

11             THE DEFENDANT:  I do, Your Honor.

12             THE COURT:  All right.  Next, I want to refer you to

13   Section 10 of the plea agreement, which begins on Page 4 and runs

14   over onto Page 5, and is entitled "Agreement on Sentencing

15   Guidelines".

16        Now, before we get into the agreement, I want to ask you,

17   has your attorney talked with you about the federal sentencing

18   guidelines and how they generally work?

19             THE DEFENDANT:  He has, Your Honor.

20             THE COURT:  And has he shown you that chart in the back

21   of the book?

22             THE DEFENDANT:  Yes, he has.

23             THE COURT:  All right.  Well, working from that chart

24   then, I want to have a similar discussion with you.

25        If you'll recall, on the left side of the chart, there are a

1   series of numbers that run from low to high as you go down the

2   page.  Those are offense levels, and the offense level is

3   calculated by starting with a Base Offense Level, and then that

4   can be adjusted upward or downward, based upon -- that's a

5   starting point, and that can be adjusted upward or downward based

6   on the facts and circumstances of the case to arrive at an

7   adjusted offense level.

8       Then, consideration is generally given for a reduction for

9   acceptance of responsibility.  Has your attorney talked with you

10  about that?

11          THE DEFENDANT:  He has, Your Honor.

12          THE COURT:  All right.  And then you generally arrive

13  at a Total Offense Level.

14      Then you go up to the top of the chart, and there are six

15  criminal history categories, and you would fit into one of those,

16  depending on the number of points, if any, assigned to any prior

17  convictions that you may have.

18      Then you combine the criminal history category and the Total

19  Offense Level and arrive at a range of months of imprisonment

20  somewhere in the chart.

21      Also, certain -- if the range is in certain parts of the

22  chart, there are certain alternatives available to imprisonment.

23      Do you understand all of these things about the guidelines

24  so far?

25          THE DEFENDANT:  I do, Your Honor.

```
1              THE COURT:  All right.  Now, once we arrive at that

2    guideline range, I have the authority to sentence you within that

3    range.  I also have the authority, under certain circumstances,

4    to sentence you outside of that range.

5         If I sentence you outside of the range based on factors

6    identified in the guidelines, that's generally known as a

7    departure, and if I sentence you outside of the range based on

8    factors outside of the guidelines, that's generally known as a

9    variance.

10        Do you understand all of these things that I've told you

11   about the guidelines?

12             THE DEFENDANT:  I do, Your Honor.

13             THE COURT:  And has your attorney gone over all of

14   these things with you, as well?

15             THE DEFENDANT:  He has.

16             THE COURT:  All right.  With that in mind then, Section

17   10 contains an agreement on the guidelines that you have reached

18   with the government, and this is similar to the Stipulation of

19   Facts, in that the Presentence Report that will be prepared by

20   the probation officer will contain a guideline -- a recommended

21   guideline calculation and, ultimately, at sentencing, I will make

22   guideline findings based at least in part on those

23   recommendations.

24        So, even though you have reached an agreement with the

25   government on this, I want you to understand that, in this
```

1    process, neither the probation officer, nor this Court, are bound

2    by this agreement on the guidelines.  Do you understand that?

3              THE DEFENDANT:  I do understand, Your Honor.

4              THE COURT:  And do you further understand that if I

5    make guideline findings at sentencing that are different from or

6    inconsistent with the agreement here in Section 10, you will

7    still be bound by your guilty plea and would have no right to

8    withdraw it?  Do you understand that?

9              THE DEFENDANT:  I do understand.

10             THE COURT:  All right.  Next, I want to refer you to

11   Section 11 of the plea agreement, which is on Page 5 and is

12   entitled "Waiver of Appeal and Collateral Attack".

13       Now, this section relates to a couple of different

14   procedures that I want to describe to you briefly.

15       An "appeal" is a procedure by which a party to a case before

16   a District Court like this one and, in a criminal case, it is

17   often the defendant, goes to the Court of Appeals, which is the

18   next level up of the court system, and argues that certain errors

19   or mistakes may have taken place in their criminal case before

20   the District Court.

21       A "collateral attack" is similar, but it is a separate civil

22   case that may be filed after a defendant's criminal case is over.

23   It's sometimes referred to as a "habeas corpus petition" and, in

24   that proceeding, the defendant may also argue that certain errors

25   or mistakes may have taken place in their criminal case before

1    the District Court.

2         Now, do you understand those two procedures, at least as

3    I've briefly described them to you?

4              THE DEFENDANT:  I do, Your Honor.

5              THE COURT:  All right.  The other things I want to go

6    over with you before we get into Section 11 is that there are two

7    phases two a criminal case.

8         The first phase is the one in which guilt or innocence is

9    determined.  It starts at the very beginning of the case and

10   includes all of the proceedings up to the point at which that

11   determination is made.

12        Sometimes, guilt or innocence is determined by a jury trial

13   or a bench trial.  Much more often, it is done by a guilty plea,

14   like what we're doing today.

15        Once guilt has been determined, then we move on to the

16   penalty phase of the case in which, obviously, penalty is

17   determined, and that generally concludes with a sentencing

18   hearing at the end of the case.

19        Now, do you understand the two phases of a criminal case as

20   I've described them to you?

21             THE DEFENDANT:  I do, Your Honor.

22             THE COURT:  All right.  Well, with all of that in mind,

23   in the first paragraph of Section 11, we have an appeal waiver,

24   and I want to go over that with you now.

25        Do you understand in that first paragraph that you waive the

1    right to appeal your conviction, any sentence of imprisonment,

2    fine, or term of supervised release, or the manner in which any

3    sentence was determined on any ground whatsoever, with one

4    exception.  You may appeal any sentence that is greater than the

5    maximum penalty set forth by statute.  Do you understand that

6    waiver?

7              THE DEFENDANT:  I do, Your Honor.

8              THE COURT:  Anything about that that you don't

9    understand or that you have questions about?

10             THE DEFENDANT:  No, sir.

11             THE COURT:  All right.  Do you also understand that in

12   the second paragraph of Section 11, that you may not file a later

13   civil proceeding, sometimes referred to as a "collateral attack"

14   or a "habeas corpus petition", challenging your plea, conviction

15   or sentence?

16             THE DEFENDANT:  I understand, Your Honor.

17             THE COURT:  And, finally, do you understand that you

18   are in no event waiving your right to claim ineffective

19   assistance of counsel either on appeal or by collateral attack?

20             THE DEFENDANT:  I understand.

21             THE COURT:  All right.  Finally, I want to refer you to

22   Section 12 of the plea agreement, which begins on Page 5 and runs

23   over onto Page 6.  It's entitled "Waiver of FOIA and Privacy

24   Right", and this waiver means that you can't go back after this

25   case is over and seek documents or other information about this

```
1     case from the government even with a Freedom of Information Act

2     request.

3          Do you understand that waiver?

4              THE DEFENDANT:  I do, Your Honor.

5              THE COURT:  And, Mr. Johnson, have you thoroughly

6     reviewed the plea agreement with your client?

7              MR. JOHNSON:  I have, Your Honor.

8              THE COURT:  And do you believe that he fully

9     understands the various terms and provisions of the plea

10    agreement, including the waivers and other matters that I have

11    gone over with him this afternoon?

12             MR. JOHNSON:  Yes, I do.

13             THE COURT:  And, Mr. Reynolds, have you reviewed the

14    plea agreement in detail with your attorney?

15             THE DEFENDANT:  I have, Your Honor.

16             THE COURT:  And do you believe that you have had

17    adequate time to discuss your case fully with your attorney?

18             THE DEFENDANT:  I have, Your Honor.

19             THE COURT:  Has your attorney answered any questions

20    that you have had about your case?

21             THE DEFENDANT:  He has, Your Honor.

22             THE COURT:  And, Mr. Johnson, during your

23    representation of the defendant, has he been cooperative?

24             MR. JOHNSON:  He's been fully cooperative, Your Honor.

25             THE COURT:  Mr. Reynolds, has anything further been
```

1    agreed to, either orally or in it writing, that is not contained

2    in the plea agreement?

3            THE DEFENDANT:  No, Your Honor.

4            THE COURT:  All right.  I will order that the plea

5    agreement be filed.

6        I will find that the defendant understands and agrees with

7    the terms contained in the plea agreement.

8        I will defer accepting or rejecting the plea agreement until

9    sentencing, after the Presentence Report has been received and

10    considered.

11        Now, Mr. Reynolds, have you received and read and reviewed

12    with your attorney a copy of the single-count information, the

13    charging document in this case?

14            THE DEFENDANT:  I have, Your Honor.

15            THE COURT:  And do you understand the charges contained

16    in the information?

17            THE DEFENDANT:  I do, Your Honor.

18            THE COURT:  Would you like me to read the information

19    to you or will you waive the reading of the information?

20            THE DEFENDANT:  I'll waive the reading.

21            THE COURT:  As I understand it, you will be pleading

22    guilty to a single-count information which charges you with

23    negligent discharge of a pollutant in violation of 33 U. S. C.

24    Section 1319(c)(1)(A) and 1311.  Now, I want to go over that

25    charge and those statutes with you in just a little bit more

1    detail.

2        Section 1319(c)(1)(A) provides in pertinent part that:

3        "Any person who negligently violates Section 311" -- or, I'm

4    sorry -- "1311 of this title shall be punished by a fine of not

5    less than $2,500.00, nor more than $25,000.00 per day of

6    violation, or by imprisonment for not more than one year, or by

7    both."

8        Section 1311 provides in pertinent part that:

9        "Except as in compliance with this section and certain other

10   sections of this title, the discharge of any pollutant by any

11   person shall be unlawful."

12       Now, in order to prove that charge against you, the

13   government would have to prove the following elements, each

14   beyond a reasonable doubt, and they are:

15       First, that a pollutant was discharged from a point source

16   into waters of the United States;

17       And, second, the discharge did not occur pursuant to a Clean

18   Water Act permit;

19       And, finally, your negligent conduct proximately caused the

20   discharge.

21       Now, I want to go over with you some definitions that apply

22   to what I have just told you.

23       A "pollutant" includes solid waste, chemical waste, and

24   industrial, municipal and agricultural waste.

25       To "discharge" means to add to the navigable waters of the

United States, the contiguous zone, or the ocean.

The term "navigable waters of the United States" includes interstate waters, waters which have been or may be susceptible to use in interstate commerce, and tributaries of such water.

A "point source" means any discernable, confined, discrete conveyance, including, but not limited to, any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, and concentrated animal feeding operation, or vessel or other floating craft from which pollutants are or may be discharged.

A "Clean Water Act permit" is a permit issued under the National Pollutants Discharge Elimination System by the federal government or a state government.

An act is done with "negligence" when a person fails to exercise the degree of care that a person of ordinary prudence would have exercised in similar circumstances.

And, under the "responsible corporate officer" doctrine, the government does not need to prove that you personally participated in the wrongful act if you were a corporate officer who had responsibility and authority either to prevent the violation, or to promptly correct the violation, you may not [sic] be individually responsible -- or you may be held individually responsible.  A corporate officer need not, in fact, exercise his authority and the corporation need not expressly vest a duty in the officer to oversee the activity, to be deemed

1    a responsible corporate officer.

2         Any objections to the elements and definitions that I have

3    described?

4              MR. WRIGHT:  No, Your Honor.

5              MR. JOHNSON:  None, Your Honor.

6              THE COURT:  All right.  Next, I want to go over with

7    you the maximum any minimum sentences you may face as a result of

8    your plea, and that is a maximum term of imprisonment of one

9    year; a maximum [sic] -- a minimum fine of $2,500.00 and a

10   maximum fine of $25,000.00 per day of violation on each;

11   alternatively, a maximum fine of $100,000.00, or twice the gross

12   pecuniary gain or loss resulting from your conduct, whichever is

13   greater, and a maximum term of supervised release of one year.  A

14   mandatory special assessment of $25.00 would be required; and

15   restitution could be ordered if it were found to be applicable.

16        Next, I want it return to our discussion of the federal

17   sentencing guidelines.  They are advisory, meaning they're not

18   mandatory or don't have to be followed, but they will nonetheless

19   play an important role in your case from here on out.

20        This Court will consider the factors set forth in 18 U. S.

21   C. Section 3553(a), including the advisory guidelines, in

22   determining the appropriate sentence in your case.

23        I now want to ask you some questions that will help me to

24   understand your understanding of the advisory guidelines.

25        Have you discussed with your attorney the various factors

1   which apply in determining what the sentence in your case may be

2   under the advisory guidelines?

3           THE DEFENDANT:  I have, Your Honor.

4           THE COURT:  And do you understand, on this single-count

5   information, you cannot in any event receive a greater sentence

6   than the statutory maximum that I explained to you a few moments

7   ago?

8           THE DEFENDANT:  I understand.

9           THE COURT:  Do you understand that the Court will not

10   determine the sentence for your case until a later date, when a

11   Presentence Report has been completed, and both you and the

12   government have had an opportunity to challenge the facts and

13   analysis reported by the probation officer?

14           THE DEFENDANT:  I understand, Your Honor.

15           THE COURT:  Do you also understand that under a concept

16   known as "relevant conduct", this Court, in determining the Total

17   Offense Level for sentencing purposes under the guidelines, may

18   take into account any conduct, circumstances or injuries relevant

19   to the crime of which you may be convicted?

20           THE DEFENDANT:  I understand, Your Honor.

21           THE COURT:  Do you understand that after the Court has

22   determined what advisory guidelines apply to your case, the Court

23   has the authority to vary or depart from the advisory guidelines

24   and impose a sentence that is more severe or less severe than the

25   sentence called for by the guidelines?

1              THE DEFENDANT:  I understand.

2              THE COURT:  And do you understand that in determining

3    your sentence, the Court is obligated to calculate the applicable

4    sentencing guideline range, and to consider that range, possible

5    departures under the guidelines, and other sentencing factors

6    under 18 U. S. C. Section 3553(a)?

7              THE DEFENDANT:  I understand.

8              THE COURT:  Do you understand that parole has been

9    abolished and, if you're sentenced to prison, you will not be

10   released on parole?

11             THE DEFENDANT:  I do understand.

12             THE COURT:  Do you understand, if the Court accepts

13   your plea of guilty and the sentence ultimately imposed upon you

14   is more severe than you had hoped for or expected, you will still

15   be bound by your guilty plea and would have no right to withdraw

16   it?

17             THE DEFENDANT:  I understand, Your Honor.

18             THE COURT:  All right.  Next, I want to talk with you

19   regarding your trial and constitutional rights.

20        You have the right to plead not guilty and maintain a not

21   guilty plea throughout these proceedings, including at trial.

22        You have the right to be represented by counsel.

23        You have the right to a speedy and public trial by a jury

24   composed of citizens of this district.

25        You have the right to confront and have your attorney cross

1    examine witnesses and have your attorney move to suppress any

2    evidence he believes was illegally or unconstitutionally

3    obtained.

4         You have the right not to testify or otherwise incriminate

5    yourself, and your exercise of this right cannot be held against

6    you.

7         Do you understand these rights so far?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  You have the right to have the government

10   come in here and prove its case beyond a reasonable doubt.

11        The jury's verdict would have to be unanimous.

12        You have the right to present evidence on your own behalf.

13        You have the right to testify on your own behalf at trial;

14        And you have the right to subpoena witnesses to testify for

15   you.

16        Do you understand all of these rights?

17             THE DEFENDANT:  Yes, sir, Your Honor.

18             THE COURT:  Any of them that you don't understand or

19   that you have questions about?

20             THE DEFENDANT:  No, Your Honor.

21             THE COURT:  Other than your right to counsel, do you

22   understand that you will be giving up these rights by entering a

23   plea of guilty?

24             THE DEFENDANT:  I do, Your Honor.

25             THE COURT:  Do you understand that once you have

1    entered a plea of guilty, there's not going to be any trial; no

2    jury verdict; and no findings of innocence or guilt based on

3    disputed evidence presented to me or to a jury?

4             THE DEFENDANT:  I understand, Your Honor.

5             THE COURT:  And, just so we're clear on this, because

6    it has come up, do you understand that by pleading guilty today,

7    you are waiving any opportunity or right you may have to seek the

8    disqualification of the U. S. Attorney's Office in this case?

9             THE DEFENDANT:  Yes, Your Honor.

10            THE COURT:  Do you believe that you fully understand

11   the consequences of entering a plea of guilty in this case?

12            THE DEFENDANT:  I do, Your Honor.

13            THE COURT:  Mr. Johnson, having reviewed this case and

14   the plea agreement in detail with your client, do you believe

15   that he fully understands his rights and fully understands the

16   consequences of entering a plea of guilty?

17            MR. JOHNSON:  I do, Your Honor.

18            THE COURT:  All right.  I note that there is a detailed

19   Stipulation of Facts.  Is there any objection to the Court

20   utilizing that stipulation in its consideration for the factual

21   basis?

22            MR. WRIGHT:  No, Your Honor.

23            MR. JOHNSON:  No objection.

24            THE COURT:  All right.  Very well.

25        Mr. Reynolds, will you please stand?

1       As to the charge contained in the single-count information,

2  how do you plead, sir, guilty or not guilty?

3          THE DEFENDANT:  Guilty, Your Honor.

4          THE COURT:  You may be seated.

5       Your counsel has been provided with a written Plea of Guilty

6  Form.  I would ask that you go over that with him, if necessary,

7  sign and date it.  Then I will ask him to sign it and tender it

8  to the Court.

9          MR. JOHNSON:  May I approach, Your Honor?

10         THE COURT:  You may.

11         MR. JOHNSON:  Thank you.

12         THE COURT:  All right.  I'll note for the record that

13  the defendant has signed and dated the written plea of guilty

14  form, it has been witnessed by his counsel, and I will order that

15  it be made a part of the record for this proceeding.

16       Mr. Reynolds, is this plea the result of any threat, or

17  coercion, or harassment of you by anyone?

18         THE DEFENDANT:  No, Your Honor.

19         THE COURT:  Is it the result of any promise or

20  inducement other than those contained in the plea agreement?

21         THE DEFENDANT:  No, Your Honor.

22         THE COURT:  Are you pleading guilty to protect anyone?

23         THE DEFENDANT:  No, Your Honor.

24         THE COURT:  Are you acting voluntarily and of your own

25  free will in entering this guilty plea?

1             THE DEFENDANT:  Yes, I am, Your Honor.

2             THE COURT:  Has anyone promised or predicted the exact

3    sentence which will be imposed upon you in this matter?

4             THE DEFENDANT:  No, Your Honor.

5             THE COURT:  Do you understand that no one could know at

6    this time the exact sentence which will be imposed?

7             THE DEFENDANT:  I do understand that.

8             THE COURT:  Has your attorney adequately represented

9    you in this matter?

10            THE DEFENDANT:  He has, Your Honor.

11            THE COURT:  Has your attorney left anything undone that

12   you think should have been done?

13            THE DEFENDANT:  Not that I'm aware of.

14            THE COURT:  Have you or your attorney found any defense

15   to the charge contained in the information?

16            THE DEFENDANT:  Again, not that I'm aware of, Your

17   Honor.

18            THE COURT:  Are you, in fact, guilty of the crime

19   charged in the information?  In other words, did you do it?

20            THE DEFENDANT:  Yes, Your Honor.

21            THE COURT:  All right.  I will find that the defendant

22   is competent and capable of entering an informed plea; that the

23   plea is freely and voluntarily made; that the defendant

24   understands the nature of the charges and is aware of the

25   consequences of the plea.

 1      I will find that the defendant understands his rights and
 2   understands that he is giving up these rights by entering a plea
 3   of guilty.
 4      I will defer a factual basis finding, but I will accept the
 5   plea of guilty and defer adjudging the defendant guilty until the
 6   time of sentencing.
 7      I will ask the probation officer to prepare a Presentence
 8   Investigation Report.
 9      Mr. Reynolds, it is important that you cooperate fully with
10   the probation officer in the preparation of the Presentence
11   Report.  If you fail to cooperate fully and truthfully with the
12   probation officer, you may be subject to an enhancement of your
13   sentence or the forfeiture of certain sentence reductions for
14   which you might otherwise be eligible.
15      It's also important that you not commit any additional
16   crimes between now and sentencing, as there are additional
17   punishments that may be imposed for committing addition crimes.
18      I'll set this matter for sentencing on June 24th, 2015, at
19   2:00 p.m.  I will put the other presentence dates in my post-plea
20   order.
21      Is there -- what's the government's position on bond?
22           MR. WRIGHT:  We have no objection to a $10,000.00
23   unsecured bond.
24           THE COURT:  All right.  I'm assuming there's no
25   objection to that?

1              MR. JOHNSON:  There isn't, Your Honor.  My client

2       resides in North Carolina, so he will need to be able to travel

3       between North Carolina and West Virginia.

4              THE COURT:  All right.  Well, the paperwork I have

5       right now includes a travel restriction to the Southern District

6       of West Virginia and Eastern District of North Carolina.  That

7       should have us covered and, I suppose, implicit in that is -- are

8       the districts in between such that travel is needed, so I believe

9       we have that covered.

10         I've already signed it.  You will just need to get with the

11      deputy clerk after the hearing to make sure all the paperwork for

12      the bond is in order.

13         Anything else we need to take up today?

14             MR. JOHNSON:  Just two things.  One, for the record,

15      Your Honor, my client paid the $25.00 special assessment fee;

16      and, secondly, my client asked -- I think one of the things that

17      was suggested by the probation officer was that he have his

18      passport -- that he would surrender it -- and I know of no real

19      reason to do that.  I don't think he's any threat in terms of

20      leaving or not appearing in court, and I raised this with the U.

21      S. Attorney's Office prior to the hearing and they knew that I

22      was going to make this request to the Court that he not have to

23      do that.

24             THE COURT:  What's the government's position?

25             MR. WRIGHT:  I have no objection, Your Honor.

1           THE COURT:  All right.  Well, we'll dispense with that.

2       What have we done in these related cases?  Have we had

3   anybody surrender passports in what I call the "water cases"?

4           PROBATION OFFICER:  Your Honor, in the case this

5   morning, there was no -- in the bond conditions, he was not made

6   to surrender the passport, but I believe in the other cases, they

7   have surrendered their passports.

8           THE COURT:  Well, based on what happens today, we might

9   be re-visiting those issues, but since there's no objection, I'm

10  not going to require it in this case, and it's really the first

11  time it's been raised as an issue.

12          MR. JOHNSON:  Thank you.

13          THE COURT:  What was the other issue?  You said you had

14  two.

15          MR. JOHNSON:  Well, I'd just put on the record that we

16  had paid the $25.00.

17          THE COURT:  You can tender that receipt to the deputy

18  clerk when you come up to take care of the bond paperwork.

19          MR. JOHNSON:  I'll do so.

20          THE COURT:  And that will be made a part of the record.

21          MR. JOHNSON:  Thank you.

22          THE COURT:  Thank you.

23      (Proceedings concluded at 2:35 p.m., March 18, 2015.)

24

25

1    CERTIFICATION:

2         I, Ayme A. Cochran, Official Court Reporter, certify that

3    the foregoing is a correct transcript from the record of

4    proceedings in the matter of United States of America, Plaintiff

5    v. Robert Reynolds, Defendant, Criminal Action No. 2:14-cr-00277,

6    as reported on March 18, 2015.

7

8    s/Ayme A. Cochran, RMR, CRR                    April 29, 2015

9    Ayme A. Cochran, RMR, CRR                          DATE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25